UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SOPHRONIA C. BENNETT,

       Plaintiff,

v.                                                    Case No. 1:10-cv-668
                                                      Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on September 9, 1952 (AR 128).[1]  She completed the 10th grade (AR 125).  Plaintiff alleged a disability onset date of August 31, 2000, the date she was involved in a traffic accident (AR 45, 128).  She had previous employment as a home health care giver (adult foster care), housekeeper and laundry attendant (AR 120, 789).  Plaintiff identified her disabling conditions as psychological problems (depression and trouble concentrating), shoulder pain, neck pain, back problems, knee problems, neuropathy in the feet and heart problems (AR 793-98).  On November 28, 2007, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 13-23).  This decision, which was later approved by the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Appeals Council, has become the final decision of the Commissioner and is now before the Court

for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on

determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C.

§405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*,

25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based

upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th

Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court

does not review the evidence *de novo*, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that

the record also contains evidence which would have supported a different conclusion does not

undermine the Commissioner's decision so long as there is substantial support for that decision in

the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must

stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to

benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 31, 2000 through her date last insured of December 31, 2005 (AR 15). At step two, the ALJ found that plaintiff suffered from severe impairments of: degenerative disc disease; status post carpal tunnel releases; coronary artery disease, post stent placement; fibromyalgia; diabetes; and depressive and anxiety disorders (AR 15). At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 18).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) as follows:

> through the date last insured, the claimant's impairments prevented her from: lifting or carrying over 20 pounds occasionally or more than 10 pounds frequently; using ladders, scaffolds or ropes; more than occasional crawling, kneeling, crouching, stooping, ramp or stair climbing; working in an area with even moderate exposure to extreme temperatures or vibrations; more than frequent handling or fingering. The claimant can each sit, stand and walk 6 hours in an 8-hour workday, and she has a residual functional capacity for a range of light work, that: is simple and unskilled in nature with an SVP rating of 1 or 2; involves 1, 2 or 3-step instructions; does not involve concentration on detailed/precision tasks or multiple/simultaneous task[sic]; does not require her to read, compute, calculate, problem solve or reason; allows an absence, tardiness, or leaving work early one time monthly; involves minimal contact and directions from a supervisor; is routine and does not require changes or adaptations in work settings or duties more than once per month.

(AR 19). The ALJ determined that plaintiff was not disabled at this step (AR 22). Specifically, the ALJ found that "claimant's past relevant work as a laundry attendant did not require the performance of work-related activities precluded by the claimant's residual functional capacity" (AR 22). Accordingly, the ALJ determined that plaintiff was not under a disability as defined in the Social

4

Security Act, at any time from August 31, 2000 (the alleged onset date) through December 31, 2005 (the date last insured) (AR 22-23).

### III.  ANALYSIS

Plaintiff raised two issues (with sub-issues) on appeal.  *See* discussion in §§ III. A-B., *infra*.  In addition, plaintiff submitted new evidence that was not presented to the ALJ.  *See* discussion in § III.C., *infra*.

> **A.     There is no vocational testimony to support a conclusion that this claimant can perform substantial gainful activity.**
>
> **1.     There is inadequate consideration of mental impairments found by the ALJ to exist.**

Plaintiff contends that the ALJ failed to include her panic disorder in hypothetical questions posed to the vocational expert (VE), for the purpose of determining whether plaintiff could perform her past relevant work as a laundry attendant at step four of the sequential evaluation. Specifically, plaintiff contends that the ALJ should have included additional diagnostic criteria for a "panic disorder" as found in the *Diagnostic and Statistical Manual of Mental Disorders* (*DSM-IV*) which requires "recurrent unexpected panic attacks."  Plaintiff's Brief at p. 10.  Plaintiff's contention is without merit.

In *D'Angelo v. Commissioner of Social Security*, 475 F.Supp.2d 716 (W.D.Mich. 2007), this court addressed the ALJ's use of VE testimony to assist in determining whether a claimant can perform his or her past relevant work:

> It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work.  *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980).  To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy.  *See Studaway v. Secretary*

*of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987); *see also* 20 C.F.R. § 404.1565.

A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir.2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Servs.*, 935 F.2d 270, 1991 WL 100547 at *3 (6th Cir.1991); *Rivera v. Barnhart*, 239 F.Supp.2d 413, 421 (D.Del.2002). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform his past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). *See, e.g., Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir.2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

*D'Angelo*, 475 F.Supp.2d at 723-24.

When the ALJ obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The record reflects that a DDS examining psychologist, Steve Geiger, Ph. D., diagnosed plaintiff with: major depression, recurrent, moderate; panic disorder, without agoraphobia; and nicotine dependence (AR 424). A non-examining agency psychiatrist, Thomas Tsai, M.D., completed a psychiatric review technique form (PRTF), which found that plaintiff

suffered from an affective disorder of the type identified in Listing 12.04 (i.e., major depressive

disorder) and an anxiety-related disorder under Listing 12.06 (panic attack without agoraphobia)

(AR 435-48).  However, in the PRTF, Dr. Tsai determined that plaintiff did not meet the severity

requirements of either listed impairment (AR 435-48).  In a mental RFC assessment, Dr. Tsai found

that plaintiff had at most moderate limitations, and gave the following assessment:

> Due to major depression and panic disorder her abilities to
>
> > 1) maintain attention & concentration
> > 2) perform activities [with] persistence & pace
> > 3) accept instruction and respond appropriately to criticism
> > 4) respond appropriately to changes in work settings
> > are moderately impaired.
>
> She can do unskilled work.

(AR 451).

The ALJ addressed plaintiff's psychological condition in the RFC, which limited

plaintiff to "simple and unskilled in nature with an SVP rating of 1 or 2; involves 1, 2 or 3-step

instructions; does not involve concentration on detailed/precision tasks or multiple/simultaneous

task[sic]; does not require her to read, compute, calculate, problem solve or reason; allows an

absence, tardiness, or leaving work early one time monthly; involves minimal contact and directions

from a supervisor; is routine and does not require changes or adaptations in work settings or duties

more than once per month" (AR 17-19, 21-22).   In addition, the ALJ found that plaintiff did not

meet the requirements of the Listed Impairments, specifically Listing 12.04 (affective disorders) and

12.06 (anxiety-related disorders) (AR 17-19, 21-22).

It was not necessary for the ALJ's hypothetical question to specifically reference the

diagnostic criteria for a panic disorder as set forth in the *DSM-IV*.  Because the purpose of the

7

hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnoses.  "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions."  *Webb*, 368 F.3d at 632.  The ALJ addressed the evidence of plaintiff's panic attacks as those attacks limited plaintiff's ability to work in both the RFC and the hypothetical question posed to the VE (AR 19, 804).  Accordingly, plaintiff's claim of error should be denied.

### 2.    There is no vocational testimony that plaintiff could perform her past work given the exertional limitations found by this ALJ to exist.

In a related claim, plaintiff contends that the VE's testimony did not support the ALJ's conclusion that she could perform her past relevant work.  The VE testified that plaintiff's past relevant work as a laundry attendant involved medium work, i.e., "[t]he Laundromat [at the nursing home], she did work with medium [sic], but there is Laundromat attendant work as light as long as should would work for eight hours a day, 40 hours a week" (AR 804).  Plaintiff contends that her past laundry work was performed at the medium exertional level and "involved stooping," both of which were precluded by the ALJ's RFC determination, which limited her to light work and occasional stooping (AR 19).  Plaintiff's contention is without merit.

The Social Security Act requires a claimant to show at step four that his impairments are so severe that he is "unable to do his previous work."  42 U.S.C. § 423(d)(2)(A).  To meet this requirement, plaintiff must prove "an inability to return to his former *type* of work and not just to his former job."  *Studaway*, 815 F.2d at 1076 (citation omitted) (emphasis in original).  *See D'Angelo*, 475 F.Supp.2d at 723-24 ("[t]o support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the

demands and duties of the past job as actually performed *or* as ordinarily required by employers throughout the national economy") (emphasis added). The VE's testimony established that plaintiff could perform her past relevant *type* of work as a Laundromat attendant, work which could be performed at the light exertional level with her limitations as set forth in the RFC. On this basis, plaintiff's claim will be denied as to this issue.

> **3.     The ALJ erred to the extent that he concludes claimant could perform her past relevant work.**

In another related claim, plaintiff contends that the VE's testimony regarding the availability of work as a laundry attendant was inconsistent with the work she performed. Plaintiff points to a job listing in the *Dictionary of Occupational Titles* (*DOT*) for "Self-Service-Laundry-And-Dry-Cleaning Attendant." Plaintiff's Brief at p. 12. Plaintiff contends that she cannot perform the work as defined in the *DOT* because it described the position as involving medium work and "constant handling," two activities which exceed her RFC (i.e., light work limited to "frequent handling and fingering") (AR 19). The Sixth Circuit, however, has rejected the argument that the Commissioner is bound by the *DOT*'s characterization of occupations, holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). *See also Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995) (same). The ALJ could properly rely on the VE's testimony regarding available positions as a laundry attendant.

**B.    The ALJ erred in ignoring the opinion of the plaintiff's treating doctor without a correct factual reason to do so.**

Plaintiff contends that the ALJ ignored the opinion of her treating doctor, John A. Baker, III, M.D., whom she states "practices medicine specializing in psychiatry."  Plaintiff's Brief at p. 13.  Plaintiff contends that the ALJ wrongfully assumed that Dr. Baker  "had no qualifications to render an opinion."  *Id.*  In his decision, the ALJ gave no weight to Dr. Baker's opinions with respect to plaintiff's exertional capabilities  (AR 18, 21).  The ALJ reviewed the doctor's opinions in part as follows:

> During October 2006, Dr. Baker, a psychiatrist, indicated that the claimant had physical restrictions (Exhibit 26F) that were not compatible with performance of substantial gainful activity (e.g., claimant could only sit/stand and walk a combined 2 hours in an 8-hour workday).  A review of Dr. Baker's progress notes disclose completion of no physical evaluations of the claimant (he is not qualified to perform them), and contains no reference to abnormal objective findings affiliated with the claimant's gait, range of motion, neurological, orthopedic or vascular status.  Dr. Baker's opinions as to claimant's exertional capabilities are accorded no weight.  Dr. Baker also concluded that [the claimant] had debilitating psychologically-engendered limitations.  According to the doctor, the claimant's impairments resulted in marked restriction in such areas as maintaining attention and concentration; perform activities within a schedule, maintain regular attendance and be punctual; work in coordination with others; [and] complete a normal workday or work week schedule (Exhibit 37F).  The Administrative Law Judge finds the degree of functional limitations caused by the claimant's mental impairments suggested by Dr. Baker, to be contraindicated by substantial evidence in the record, including the physician's own progress notes.  While certainly having some documented [sic] of dysphoric and anxious mood, the overall record, including the claimant's clinical presentation, lifestyle and activities of daily living, do not unveil that she lacks suitable concentration, memory, adaptive, basic cognitive or interpersonal skills for vocational involvement that is simple, routine, repetitive and somewhat solitary in nature as depicted in the residual functional capacity adopted.  Within testimony or the written record, it was reported that the claimant was able to perform certain self-care tasks, prepare simple meals, wash dishes and dust.  In addition, the claimant shopped, attended to family financial matters, and occasionally operated a motor vehicle.  Further, the claimant read, watched television, periodically went out to eat, occasionally played cards and Bingo.  To her credit, the claimant helped care for two terminally ill siblings (Exhibits 4E, 9E, 11E, 13E, 15F pp. 39, 42,43, 17F).

(AR 21-22).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (because the opinion of a treating source is entitled to controlling weight under certain circumstances, the ALJ must articulate good reasons for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2)).

Plaintiff relies on note from Dr. Baker dated July 20, 2006, stating that "Patient has multiple medical problems. Sufficient for <u>eligibility</u> [] for Soc. Sec. disability and medicate" (AR

454) (emphasis in original).   Although Dr. Baker was a treating physician, the ALJ was not bound

by the doctor's conclusion that plaintiff was unable to work.  *See* 20 C.F.R. § 404.1527(e)(1) ( "[a]

statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the

Commissioner] will determine that you are disabled').   Such statements, by even a treating

physician, constitute a legal conclusion that is not binding on the Commissioner.  *Crisp v. Secretary*

*of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986).   The determination of disability

is the prerogative of the Commissioner, not the treating physician.  *See Houston v. Secretary of*

*Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

        Plaintiff also claims that the ALJ failed to address Dr. Baker's evaluation of her

physical limitations.   The doctor's opinions are set forth in a "medical assessment of ability to do

work-related activities (physical)" dated October 2, 2006 (AR 480-83).   In this assessment, Dr.

Baker found that plaintiff could perform the following activities without interruption: sit for one

hour; stand for 1/2 hour; and walk for 1/8 hour (AR 480).   During an eight-hour workday, plaintiff

could sit up to two hours, stand for 1/2 hour and "never" walk, and plaintiff could only engage in

these combined activities for a total of two hours in an eight-hour workday (AR 480).   Dr. Baker

also assigned restrictions for: lifting (10 pounds occasionally); carrying (5 pounds occasionally);

grasping (occasionally); fine manipulation (occasionally); pushing (occasionally, limited to 10

pounds); and use of foot controls (right only) (AR 481).   Plaintiff was never to engage in bending,

twisting, reaching above shoulder level, squatting, kneeling, climbing ladders, crawling, or stooping

(AR 482).   Plaintiff could occasionally climb stairs (AR 482).   Plaintiff also had sensory limitations

in feeling and balance, and had to avoid all environmental hazards (unprotected heights, moving

machinery, temperature extremes, dust, chemicals, fumes, noise, automobiles, outside in cold or wet

weather, vibration and humidity) (AR 482).  Dr. Baker identified other factors that support his conclusions: "ongoing depression; chronic pain, and concentration deficits mitigate against any gainful employment, now, or in the future for this individual.  She is significantly impaired, both physically & mentally" (AR 483) (emphasis in original).  However, Dr. Baker did not identify any supportive findings (e.g., x-rays, EMG results, MRI results, motion studies, etc.) (AR 483).

The regulations require the ALJ to give "good reasons" for the weight given to the opinions of a "treating source" (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation).  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (because the opinion of a treating source is entitled to controlling weight under certain circumstances, the ALJ must articulate good reasons for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2)).  Dr. Baker, as a licensed physician, can be considered both a  "treating source" and an "acceptable medical source."  *See* 20 C.F.R. § 404.1502 (defining an "acceptable medical source" as a source described in 20 C.F.R. § 404.1513(a) who provides evidence about your impairments, i.e., licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).  Defendant asserts that Dr. Baker was not qualified to perform a physical evaluation of plaintiff, relying on *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001), in which the court held that the ALJ did not err in discounting a psychologist's opinion about the claimant's physical functioning, because a psychologist was not qualified to diagnose a physical condition.  Here, Dr. Baker is a psychiatrist, not a psychologist.  Defendant does not dispute that the doctor possesses an M.D. and is licensed to practice medicine.  Accordingly, the ALJ erred in stating that Dr. Baker was "not qualified to perform" a physical evaluation of plaintiff (AR 21).

13

Nevertheless, the court concludes that substantial evidence supports the ALJ's decision to disregard Dr. Baker's opinion.  The ALJ observed that Dr. Baker's progress notes did not disclose completion of  physical evaluations of the plaintiff nor did the doctor's notes refer to abnormal objective findings affiliated with the claimant's gait, range of motion, neurological, orthopedic or vascular status (AR 21).  The ALJ was not bound by the conclusory statements of Dr, Baker, which are unsupported by detailed objective criteria and documentation.  *Buxton*, 246 F.3d at 773; *Cohen*, 964 F.2d at 528.  Accordingly, plaintiff's claim with respect to the ALJ's evaluation of Dr. Baker should be denied.

## C.    New evidence

Finally, plaintiff has presented new evidence from another treater, Mary Stelma, Ph.D.  By way of background, the ALJ reviewed Dr. Stelma's notes and reports from March 2001 through May 2002 (AR 18, 192-97, 266-323).  In this regard, the ALJ noted that in May 2002, Dr. Stelma found that plaintiff's depression was "currently under fairly good control" (AR 280).  On appeal, plaintiff relies on new evidence, in the form of Dr. Stelma's sworn statement from April 15, 2008 (AR 761-83).  While Dr. Stelma's statement refers to plaintiff's treatment during the relevant time period, the doctor gave this statement more than two years after plaintiff's last insured date and over four months after the ALJ issued the decision denying benefits (761-83).  Plaintiff's counsel obtained this statement and submitted it to the Appeals Council "specifically to address the wrongful actions of the Administrative Law Judge in refusing to consider evidence of multiple treating psychologists" (AR 760). In her statement, Dr. Stelma opined that plaintiff could "very possibly" experience decompensation in her emotional state if she were placed in a competitive, work-like setting involving simple tasks, that objective medical testing confirmed the existence of severe

14

depression and that Dr.Baker's opinions were consistent with her own (AR 768, 776-77).  In addition, plaintiff refers to Dr. Stelma's medical records from October and November 2002, which were not part of the administrative record (AR 730-31).

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g).  *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988).  Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g).  In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*   "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).  Plaintiff has neither requested a sentence-six remand nor shown that the requirements for a remand have been met.  Accordingly, there is no basis for this court to review the new evidence.[2]

---

[2] In this regard, the court notes that plaintiff's post-hearing solicitation of additional from evidence from Dr. Stelma "specifically to address the wrongful actions of the Administrative Law Judge" does not meet the good cause requirement of a sentence-six remand. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (in denying the plaintiff's request for a sentence-six remand, in which the plaintiff sought to add new evidence in the form of a medical opinion that critiqued the ALJ's decision, the court held that there was not "good cause" for a remand, because allowing this opinion "would amount to automatic permission to

## IV.     Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  June 8, 2011                              /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

supplement the administrative records with new evidence after the ALJ issues a decision in the case, which would seriously undermine the regularity of the administrative process").